UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRANK J. ESQUIVEL,<br><br>           Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | Case No.: 5:11-CV-00905 PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 17, 19)** |

Plaintiff Frank Esquivel ("Esquivel") appeals the decision by Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying his disability insurance benefits.[1] Esquivel now moves for summary judgment. The Commissioner opposes the motion and cross-moves for summary judgment. The matter thereafter was submitted without oral argument, pursuant to Civ. L.R. 7-1(b). Having reviewed the papers, Esquivel's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED.

---

[1] The Administrative Law Judge Brenton L. Rogozen ("the ALJ") issued his ruling on January 7, 2009. The ALJ's decision became final on December 22, 2009, when the Appeals Council of the Social Security Administration denied Esquivel's request for administrative review of the decision.

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
1

## I.   BACKGROUND

The following facts are taken from the January 7, 2009 decision by the ALJ and the accompanying administrative record ("AR").

### A. Esquivel

At the time of the hearing, Esquivel was twenty-two years old.[2] Esquivel completed one year with the San Jose Job Corp, but never graduated from high school or earned a GED.[3] Esquivel previously worked at a number of jobs, including jobs at Macy's, Great America, a day care center, and a restaurant. His longest job lasted about four months.[4] At his hearing, Esquivel stated that he has not been substantially employed since early 2006[5] and that his medical conditions prevent him from seeking employment.[6]

### B. Medical History

Esquivel suffers from Arnold Chiari Syndrome Type 1[7] and Melnick-Fraser Syndrome.[8] In November 2002, Esquivel had brain surgery related to the Arnold Chiari Syndrome,[9] as well as ear

---

[2] See AR at 37, 111.

[3] See id. at 41-42.

[4] See id. at 42-43, 117, 128-130.

[5] See id. at 45.

[6] See id. at 398.

[7] See id. at 600.  Arnold Chiari Syndrome can cause malformations that are "structural defects in the cerebellum, the part of the brain that controls balance," causing symptoms such as "dizziness, muscle weakness, numbness, vision problems, headache, and problems with balance and coordination." *Chiari Malformation Information Page*, NATIONAL INSTITUTE OF NEUROLOGICAL DISORDERS AND STROKE, http://www.ninds.nih.gov/disorders/chiari/chiari.htm (last visited March 12, 2012).

[8] See AR at 555-556.  Melnick-Frasner Syndrome is known to cause "malformations of the ears and kidneys" that can result in "hearing loss and other ear abnormalities." *Branchiootorenal Syndrome*, GENETICS HOME REFERENCE, http://ghr.nlm.nih.gov/condition/branchiootorenal-syndrome (last visited March 12, 2012).

[9] See AR at 600-602.

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

surgery.[10] Esquivel has also been diagnosed with depression, upper back pain, bilateral hearing loss, obstructive sleep apnea, learning disability, and positive speech defect.[11]

### C. Procedural History

On February 10, 2006, Esquivel applied for disability insurance benefits.[12] The application was initially denied on September 27, 2006.[13] On April 27, 2007, his application was denied upon reconsideration.[14] On December 4, 2008, the ALJ held an administrative hearing in San Jose, California.[15] Esquivel, who was represented by an attorney, testified at the hearing with the assistance of a sign language interpreter.[16]

### D. The ALJ's Findings

The ALJ found that Esquivel was not disabled within the meaning of the Social Security Act. The ALJ evaluated Esquivel's condition pursuant to the sequential process required by 20 CFR §§ 404-1520(a) and 416.920(a).

At step one, the ALJ concluded that Esquivel had not engaged in substantial gainful activity since February 10, 2006, the application date.

At step two, the ALJ found that Esquivel suffered from the severe impairments of Arnold Chiari Syndrome Type I (with the residual effects of neurosurgical decompression and scoliosis),

---

[10] *See id.* at 603-604.

[11] *See id.*

[12] *See id.* at 15.

[13] *See id.*

[14] *See id.*

[15] *See id.*

[16] *See id.*

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
3

Melnick-Frasner Syndrome (with speech and hearing problems), bilateral hearing loss, obstructive sleep apnea, a history of learning disability, and depressive disorder.

At step three, the ALJ determined that Esquivel did not have an impairment that met or medically equaled a listed impairment.

At step four, the ALJ found that Esquivel had no past relevant work. The ALJ further found that Esquivel retained the residual functional capacity to do "light" work. In particular, the ALJ found that Esquivel is able to lift and carry ten pounds frequently and twenty pounds occasionally, he is able to stand and/or walk for six hours of an eight hour workday, he is able to sit for six hours of an eight hour workday, he is limited to occasional overhead reaching, he must avoid concentrated exposure to noise and vibration, he must avoid a noisy environment or work that requires public speaking, and he is precluded from working around heights and machinery.

At step five, the ALJ found that Esquivel's residual functional capacity enabled him to perform other work that exists in significant numbers in the national economy.

Based on those determinations, the ALJ concluded that Esquivel was not disabled as defined by the Social Security Act at any time through the date of his decision.[17]

## II.   LEGAL STANDARDS

### A. Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying Esquivel benefits. The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.[18] In this context, the term "substantial evidence" means

---

[17] *See id*. at 24.

[18] *See Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
4

"more than a mere scintilla but less than a preponderance — it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."[19]  When determining whether substantial evidence exists to support the ALJ's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.[20]  Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the ALJ.[21]

### B. Standard for Determining Disability

A person is "disabled" for purposes of receiving disability insurance benefits if he or she is unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months.[22]

Disability claims are evaluated using a five-step, sequential evaluation process.  In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.[23]  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied.[24]  If the claimant has a "severe" impairment or

---

[19] *See Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1257.

[20] *See Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

[21] *See Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

[22] *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450. 1452 (9th Cir. 1984).

[23] *See id*.

[24] *See id*.

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
5

combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the listing; if so, disability is conclusively presumed and benefits are awarded.[25]

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[26] to perform his or her past work; if so, the claimant is not disabled and the claim is denied.[27] The plaintiff has the burden of proving that he or she is unable to perform past relevant work.[28] If the claimant meets this burden, a *prima facie* case of disability is established.

At step five, the burden of proof shifts to the agency to demonstrate that the claimant can perform a significant number of other jobs in the national economy.[29] "This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education."[30] The Social Security Administration established the Medical-Vocational Guidelines ("GRIDS") to assist in the step-five determination.[31] The GRIDS is a matrix of the four factors described above and specific rules that identify whether jobs requiring a

---

[25] *See id.*

[26] A claimant's residual functional capacity ("RFC") is what he or she can still do despite existing exertional and nonexertional limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[27] *See Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

[28] *See id.*

[29] *See Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

[30] *See id.* at 1075.

[31] *See id.*

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
6

specific combination of those factors exist in significant numbers in the national economy.[32]  If the GRIDS match claimant's qualifications, the guidelines show whether jobs exist that claimant could perform.[33]  On the other hand, if GRIDS do not match claimant's qualification, the ALJ can either (1) use the GRIDS as a framework and determine what work exists that claimant can perform or (2) rely on a vocational expert if the claimant has significant non-exertional limitations.[34]

"The ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because the grids 'provide for the evaluation of claimants asserting both exertional and non-exertional limitations.'"[35]  "The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five."[36]  At step five, "a vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid."[37]

This court's review of the ALJ's decision regarding credibility determinations is limited.[38]  Undeniably, the ALJ's assessment of a claimant's credibility must be "properly supported by the record" and "sufficiently specific" to assure the reviewing court that the ALJ "rejected the testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding

---

[32] *See id.*

[33] *See id.*

[34] *See id.*

[35] *See id.* (citations omitted).

[36] *See id.* at 1075.

[37] *See id.*

[38] *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
7

pain."[39]  Absent affirmative evidence of malingering, an ALJ may not discount a claimant's testimony without clear and convincing reasons.[40]  Nevertheless, the court must give deference to the ALJ's assessment of Plaintiff's credibility if it is supported by the record and applicable legal standards.[41]

### III.  DISCUSSION

Esquivel requests that the court reverse the ALJ's decision and remand the case to the Social Security Administration for an award of benefits.  Alternatively, Esquivel requests that this case be remanded for further administrative proceedings to determine whether he is disabled.  The Commissioner in turn asks that the ALJ's final decision be affirmed.

The specific issues raised in this case are whether the ALJ properly: (1) considered the opinion of Mitch Gevelber, M.D. ("Dr. Gevelber"); (2) assessed the residual functional capacity ("RFC") as supported by substantial evidence; (3) considered Esquivel's statements about symptoms and limitations; and (4) relied on the GRIDS.

#### A. The ALJ Erred in Rejecting the Opinion of Dr. Gevelber

Esquivel argues that the ALJ was not justified in discounting the opinion of his treating physician Dr. Gevelber because he failed to provide specific and legitimate reasons for doing so. The Commissioner responds that the ALJ properly discounted Dr. Gevelber's opinion that Esquivel is disabled by twice mentioning earlier in his opinion that the issue of whether a claimant is "disabled" is reserved for the Commissioner.  The Commissioner also responds that because Dr.

---

[39] *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (quoting *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1213-1214 (11th Cir. 1991) (quotations omitted)).

[40] *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

[41] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Reddick v. Chafer*, 157 F.3d 715, 720 (9th Cir. 1998)).

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
8

Gevelber's opinion is unsupported, the ALJ properly rejected it by explicitly rejecting another treating opinion for being unsupported by objective findings.

An ALJ "may disregard the treating physician's opinion whether or not that opinion is contradicted."[42] When the opinion is uncontradicted the ALJ must provide "clear and convincing" reasons to reject it.[43] If a treating physician's opinion is contradicted by another doctor's opinion, an ALJ may reject it only by providing specific and legitimate reasons that are supported by substantial evidence.[44]

Here, the ALJ acknowledged the statements by Dr. Gevelber that Esquivel's illnesses create a "significant deficit in functioning" that make the possibility of "working in many cases unsafe," rendering Esquivel "totally disabled."[45] The ALJ thereafter makes no further mention of Dr. Gevelber. Because an ALJ must always give specific and legitimate reasons for dismissing a treating physician's opinion, the ALJ's "implicit" rejection of Dr. Gevelber's opinion is improper. Notwithstanding the improper rejection of Dr. Gevelber's opinion, however, and as explained below, there still exists substantial evidence to support the ALJ's findings.

### B. The ALJ's RFC Finding is Supported by Substantial Evidence

Esquivel asserts that because Dr. Gevelber's opinion was improperly disregarded and because the ALJ failed to account for certain other impairments, such as Esquivel's limited ability to remember tasks and his anger and behavioral problems, the RFC findings were not supported by

---

[42] *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

[43] *Lester v. Chatar*, 81 F.3d 821, 830-31 (9th Cir. 1995). At page 4 of his brief, the Commissioner suggests the Ninth Circuit's judicially-created standard "exceeds the requirements set forth by Congress and by the Commissioner at the behest of Congress." Any such suggestion is of course properly directed to the appellate court, and the undersigned will continue to apply binding precedent in this circuit.

[44] *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830).

[45] *See* AR at 20, 619.

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

substantial evidence.  Not surprisingly, the Commissioner urges that the ALJ's RFC findings are supported by substantial evidence.

In assessing the RFC, the ALJ considered the opinions of four separate individuals.  First, L. Bobba, M.D. ("Dr. Bobba") opined that Esquivel was capable of frequently lifting 10 pounds, occasionally carrying 20 pounds, standing, walking and sitting for six hours out of an eight hour day, and capable of unlimited pushing and pulling.[46]  Dr. Bobba also noted that Esquivel must avoid concentrated exposure to noise and vibration as well as public speaking.[47]

Second, Glenn Ikawa, M.D ("Dr. Ikawa") opined that Esquivel had mild restrictions of the activities of daily living and maintaining social functioning and moderate limitations on maintaining concentration, persistence, or pace.[48]  Dr. Ikawa also stated that Esquivel was capable of sustaining simple, repetitive tasks and able to relate and adapt to the work place.[49]

Third, Sonal Shah, M.D. ("Dr. Shah") performed a consultative examination of Esquivel. Shah confirmed the diagnoses of Arnold Chiari Syndrome Type 1 (status post-neurosurgical) and Melnick-Fraser Syndrome.[50]   Based on the examination, Shah opined that Esquivel was limited to sitting up to 6 hours per day, standing and walking cumulatively up to 6 hours per day, lifting 10 pounds frequently and 20 pounds occasionally.[51]  Shah further asserted that there were relevant visual and hearing limitations for Esquivel.[52]

---

[46] *See id.* at 417-418.

[47] *See id.* at 420.

[48] *See id.* at 414.

[49] *See id.*

[50] *See id.* at 393.

[51] *See id.*

[52] *See id.* at 394.

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Fourth, Faith Tobias, Ph.D. ("Dr. Tobias") performed a consultative psychological examination of Esquivel. Based on the examination, Dr. Tobias opined that Esquivel had mild to moderate impairment in the ability to remember and follow simple verbal instructions and in the ability to communicate effectively by writing.[53] Furthermore, Tobias stated that Esquivel had moderate impairment in the ability to remember and follow complex verbal instructions and in the ability to verbally communicate effectively.[54]

The ALJ relied on these four independent doctors in reaching the RFC findings. Despite the fact that the ALJ improperly disregarded the opinion of Dr. Gevelber, this body constitutes "more than a mere scintilla" of evidence to support the ALJ's conclusion regarding Esquivel's RFC.[55] As discussed below, the ALJ properly discredited Esquivel's subjective statements about his limited ability to remember tasks as well as his anger and behavioral problems, and did not err in excluding these conditions in his RFC findings.

**C. The ALJ Properly Evaluated Esquivel's Subjective Complaints**

Esquivel argues that the ALJ improperly discounted his testimony regarding his limitations and symptoms. He claims that the ALJ's finding against Esquivel's credibility was not clear and convincing. The Commissioner asserts that the ALJ provided numerous clear and convincing reasons for rejecting Esquivel's subjective complaints.

---

[53] *See id.* 402.

[54] *See id.*

[55] *Cf. Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (holding that the ALJ's error in improperly discrediting the opinion of the plaintiff's treating physician was harmless because it ultimately did not impact the outcome of the case); *Bacidore v. Barnhart*, No. 01-C-4874, 2002 WL 1906667, at *10 (N.D. Ill. Aug. 19, 2002) (same); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that consulting examiner's report can constitute substantial evidence because it rests on independent clinical findings).

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
11

Here, Esquivel challenges two reasons the ALJ gave for discounting his credibility: Esquivel's failure to follow treatment[56] and a failure to seek treatment for alcohol abuse.[57] First, in July 2006, Esquivel admitted to refusing to take any medication since age 14, including prescriptions for Haldol and Depakote.[58] Esquivel argues the reason for discontinuing his medication was because it was not working as well, referring specifically to the anti-depressant Wellbutrin.[59]

"An ALJ cannot be required to believe every allegation of [disability]."[60] At the same time, an ALJ's credibility finding must be properly supported by the record.[61] Here, the ALJ found that "[t]he medical reports show that the claimant often does not follow medical treatment as prescribed; however, the claimant has offered no good reasons for this failure."[62] The Ninth Circuit has affirmed reliance on evidence of failure to take medication in questioning a claimant's credibility.[63] Esquivel's claims about Wellbutrin not working are plainly inconsistent with his statement that he has not taken medication since age 14. Similarly, Haldol and Depakote are

---

[56] *See* AR at 22.

[57] *See id.* at 22-23.

[58] *See id.* at 399; Haldol and Depakote are utilized to curtail behavioral problems such as anger, aggression, and abnormal moods. *See Haloperidol*, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000604 (last visited March 16, 2012); *see also Valproic Acid*, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000677 (last visited March 16, 2012).

[59] *See* AR at 628.

[60] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[61] *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

[62] *See* AR at 22.

[63] *See Moncada v. Chate*, 60 F.3d 521, 524 (9th Cir. 1995) (allegations of disabling pain can be discredited by evidence of infrequent use of pain medication).

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
12

commonly prescribed for curtailing certain behavioral problems, such as anger and aggression, yet Esquivel consistently has not followed the prescribed regimen.

Another reason the ALJ gave for discounting Esquivel's credibility that is not challenged by Esquivel is the statement made to a physician that "getting on psychiatric medication would likely help him get his SSI application approved."[64] The ALJ properly relied on this evidence as indicative of a desire to appear more disabled for SSI purposes.

Esquivel fails to challenge yet another of the ALJ's reasons, that his subjective complaints are inconsistent with the objective medical evidence.[65] The ALJ relied on the opinions of Drs. Ikawa, Bobba, Shah, and Tobias, who unanimously opined that Esquivel was capable of performing light work with other ancillary limitations. For example, Esquivel testified that his "mind can't process that well because it's all too complicated for me."[66] However, both Drs. Ikawa and Tobias found only moderate limitations on Esquivel's mental ability, with mild limitations in some situations.[67] Esquivel's subjective complaints regarding his mental capacity appear at odds with the objective medical record, a clear and convincing reason for discrediting Esquivel's credibility.

For all these reasons, the court finds that the ALJ provided clear and convincing reasons for discounting Esquivel's subjective complaints.

**D. The ALJ Properly Applied the GRIDS in Finding Esquivel Not Disabled**

Esquivel disputes whether substantial evidence supports the ALJ's finding that he could perform other work existing in the national economy. Specifically, Esquivel contends that the ALJ

---

[64] *See id.* at 19, 427.

[65] *See id.* at 22.

[66] *See id.* at 45.

[67] *See id.* at 402, 414.

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
13

failed to take into account his significant non-exertional limitations that are not covered by the GRIDS. The Commissioner responds that those non-exertional limitations were not significant enough to proscribe the use of the GRIDS, and the ALJ's finding that "the additional limitations have little or no effect on the occupational base of unskilled light work"[68] is supported by substantial evidence.

Esquivel contends that his non-exertional limitations include not being able to work in "noisy environments" and impaired mental processing. This court is not persuaded that these limitations are "sufficiently severe" so as not to be accounted for in the GRIDS. As mentioned above, one need only look to the medical opinions of Drs. Ikawa and Tobias for an evaluation of Esquivel's non-exertional capacity. Those doctors found only moderate limitations on Esquivel's mental ability, with mild limitations in some situations. "Moderate" and "mild" limitations by definition are not severe.[69] Although Dr. Gevelber opines that Esquivel's mental illnesses create a severe deficit in functioning, substantial evidence supporting the ALJ's holding exists in the form of the contrary opinions of Drs. Ikawa and Tobias. The ALJ's use of the GRIDS was proper.

---

[68] *See id.* at 23-24.

[69] Esquivel may also be referring to his depression as a severe non-exertional limitation, but the Ninth Circuit has held that depression is not a sufficiently severe nonexertional limitation as to require the ALJ's use of a vocational expert. *See Landa v. Astrue*, 283 Fed. Appx. 556, 558 (9th Cir. 2008).

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
14

IV.     CONCLUSION

Esquivel's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated:   6l; l4234

                                                 _____
                                                 PAUL S. GREWAL
                                                 United States Magistrate Judge

Case No.: 5:11-CV-00905 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

15